J-A19003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TYRESE ANDRE RANDOLPH | : | |
| | : | |
| Appellant | : | No. 1371 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 30, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004940-2019

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED: OCTOBER 20, 2022**

Tyrese Andre Randolph appeals from the September 30, 2021 judgment of sentence of life imprisonment plus a consecutive term of ten to twenty years of imprisonment for second-degree murder, robbery, and conspiracy to commit robbery.  We affirm.

On September 5, 2019, at approximately 7:00 a.m., Dennis Early, Jr., discovered a dead body in the Harrisburg Civil War Museum parking lot and called 911.  *See* N.T. Jury Trial, 6/21/21-6/23/21, at 71-73.  Detectives William Kimmick, III, and Christopher Silvio of the Harrisburg Police Department quickly arrived on scene, immediately observing a deceased male who had suffered two gunshot wounds to the face.  The detectives were able to identify the deceased male as Torin Dworchak ("the victim"), based, in part,

_____

[*] Former Justice specially assigned to the Superior Court.

on the contents of a backpack lying nearby, which contained the victim's high school report card. A subsequent autopsy confirmed that the victim died from two fatal gunshot wounds to the face. *Id*. at 150, 153. Further investigation revealed that the victim drove a 2010 Mazda 3 that was registered to the victim's mother, Angel Harris, and his stepfather. Accordingly, Detective Silvio put out a "be on the lookout" ("BOLO") for the vehicle. *Id*. at 163.

Around 12:45 p.m. the same day, Detective Silvio was notified that the victim's vehicle had been found next to 2447 Duke Street in the City of Harrisburg. Detective Silvio called Ms. Harris to obtain consent to search the vehicle, which she gave. *Id*. at 167. Thereafter, Detective Kimmick and another investigator responded to 2447 Duke Street and processed the outside of the victim's vehicle. They noted blood on the rear bumper and lifted fifteen latent prints suitable for comparison from the vehicle's exterior. *Id*. at 102-04, 116. While most of these prints belonged to the victim, a palm print from the hood of the car was later determined to belong to Appellant and two prints lifted off the trunk were attributed to Nathaniel Acevedo ("co-defendant"). At the police station, police processed the inside of the vehicle. *Id*. at 103. Inside the trunk, Detective Kimmick observed blood spatter and a large amount of blood in the wheel well. *Id*. at 107, 111. Detective Kimmick also discovered blood on the driver's floor mat, steering wheel, and gear shift. *Id*. at 146.

Contemporaneously, Detective Silvio went to Ms. Harris's house. *Id*. Upon arrival, Ms. Harris provided bank account statements showing that the

victim's VISA debit card had recently been used at two clothing stores at the Harrisburg Mall: Journeys and Jump Sportswear. *Id*. at 169. Detective Silvio directed officers to the Harrisburg Mall to retrieve receipts and surveillance video from the two stores. While he was still reviewing the records with Ms. Harris, a third charge appeared from Choice Cigarette Outlet, which was a convenience store not located inside the mall. *Id*. at 169. Detective Silvio sent officers to retrieve surveillance footage and a receipt from this store. *Id*. at 176.

Detectives quickly received a still photograph from Jump Sportswear, depicting Appellant and an unknown male using the victim's debit card to make a $135.95 purchase. *Id*. at 169-70. This photograph prompted detectives to seek out Appellant for questioning. At approximately 6:00 p.m., officers located Appellant and asked him to consent to an interview. Appellant agreed to be interviewed and the officers transported him to the police station. *Id*. at 177-78. During the interview, Detective Silvio showed Appellant the still photograph they had received from Jump Sportswear. Appellant immediately identified himself and the other male in the photograph as co-defendant. *Id*. at 183-87, 198-99. When asked about his connection to co-defendant, Appellant explained that he had not seen co-defendant in several weeks but came to the mall after co-defendant asked him to hang out. Appellant confirmed that he was holding a Journeys bag in the picture, but claimed he was holding it for co-defendant. *Id*. at 187. The victim was not mentioned by the officers or Appellant. After Appellant finished providing this

statement, the officers took him home and continued investigating co-defendant.

The detectives also reviewed surveillance footage surrounding a purchase the victim made at Sheetz from the night of the homicide. *Id*. at 170. The video footage showed the victim and Appellant arriving at Sheetz together around 9:00 p.m. on September 4, 2019, in the victim's Mazda 3. The victim used the ATM, while Appellant looked on, before the two men purchased something at the counter with the victim's debit card. The two men then walked back to victim's vehicle, where the victim pumped gas before they left the area.

Based on the new information, officers returned to Appellant's home and retrieved him for a second interview on September 5, 2019. *Id*. at 207. Appellant characterized the victim as a "close friend" and admitted to going to Sheetz with him on September 4, 2019. *Id*. at 212. Afterwards, Appellant alleged that they returned to his house where they smoked marijuana together. *Id*. at 207. Thereafter, the victim left his house stating that he "had to go somewhere" and never returned. *Id*. at 208. Appellant also maintained that co-defendant made all the mall purchases but conceded for the first time that co-defendant had gifted several items to him. Based on the surveillance footage and Appellant's own statements, he was arrested and charged with access device fraud.

A search warrant of his residence uncovered some of the clothing Appellant was wearing at Sheetz and items that were purchased at the mall

with the victim's debit card. As the officers received and reviewed the surveillance footage and receipts from the various purchases, they were able to confirm that Appellant and co-defendant made all the purchases with the victim's debit card together.

On September 11, 2019, the detectives brought Appellant in for a third round of voluntary questioning. *Id*. at 220. For the first time, Appellant admitted that he set up the robbery of the victim with co-defendant. His plan included taking the victim to Sheetz so that he could learn his PIN for the debit card. However, Appellant claimed that the plan did not include kidnapping or murder, because he made co-defendant promise not to hurt the victim. After Appellant and the victim returned to Appellant's house from Sheetz, he briefly left the vehicle to retrieve co-defendant who then robbed the victim at gunpoint. Co-defendant then ordered the victim into the trunk of the vehicle, while co-defendant drove all three men around the city in the victim's Mazda 3. A short time later, co-defendant parked the vehicle and returned to the trunk where he executed the victim while Appellant remained in the front passenger seat.

Afterwards, Appellant and co-defendant drove to City Gas and Diesel where they unsuccessfully attempted to access the victim's bank account. Thereafter, co-defendant dropped Appellant off at home before dumping the victim's body in the Civil War Museum parking lot and ditching the vehicle on Duke Street. After the homicide, Appellant attempted to call and text the victim inquiring about his whereabouts to cover up that he had been

murdered. *Id*. at 243. Based on Appellant's third statement, he was charged with the remaining aforementioned counts. Surveillance footage and receipts from the City Gas and Diesel confirmed that, while co-defendant looked on, Appellant twice attempted to use the victim's debit card at the ATM inside the City Gas and Diesel at 10:42 p.m. on the night of the murder. Both attempts were unsuccessful.

On July 21, 2021, Appellant proceeded to a jury trial at which he did not contest the robbery or conspiracy to commit robbery charges.[1] *Id*. at 310. Instead, he contended that he was innocent of murder because it occurred after the robbery was complete and was the result of co-defendant going "rogue." *Id*. at 315. At the conclusion of trial, the jury found Appellant guilty of second-degree murder, robbery, and conspiracy to commit robbery. On September 30, 2021, the trial court sentenced Appellant to life imprisonment for second-degree murder and consecutive sentences of five to ten years for the two remaining counts. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant presents one issue for our review: "Whether the evidence was insufficient to support a conviction for second-degree murder when the evidence shows the perpetration of the predicate felony which [Appellant] agreed to ended and any subsequent felony was done entirely by [Appellant's] co-defendant?" Appellant's brief at 4.

_____

[1] Co-defendant was tried separately.

Our standard of review when considering a challenge to the sufficiency

of the evidence is as follows:

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Gause**, 164 A.3d 532, 540-41 (Pa.Super. 2017)

(citations and quotation marks omitted).

"A criminal homicide constitutes murder of the second degree when it is

committed while [the] defendant was engaged as a principal or accomplice in

the perpetration of a felony." **See Commonwealth v. Knox**, 50 A.3d 749,

754 (Pa.Super. 2012); **see also** 18 Pa.C.S. § 2502(b). "Perpetration of a

felony" is defined as "[t]he act of the defendant in engaging in or being an

accomplice in the commission of, or an attempt to commit, or flight after

committing, or attempting to commit robbery, rape, or deviate sexual

intercourse by force or threat of force, arson, burglary or kidnapping." **Id**. at

- 7 -

754-55 (quoting 18 Pa.C.S. § 2502(d)). A person is an accomplice, and "equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." *Commonwealth v. Chambers*, 188 A.3d 400, 415 (Pa. 2018). Accomplice liability "may be established wholly by circumstantial evidence. Only 'the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice.' No agreement is required, only aid." *Knox*, *supra* at 739.

Instantly, the predicate felony underlying Appellant's second-degree murder conviction was robbery – threaten immediate serious injury. "A person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." *Id*. at § 3701(a)(2). A defendant also may be guilty of robbery as an accomplice or co-conspirator as long as the defendant possessed the requisite *mens rea* to commit the criminal act and the additional elements of accomplice liability or conspiratorial liability are established. *See Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa.Super. 2016).

A person is a conspirator if "the defendant: (1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super. 2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id*. "Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016-17 (Pa.Super. 2002) (*en banc*). Therefore, in the context of murder, for example, even if an individual did not contemplate murder, where such a killing is completed by a co-conspirator in furtherance of the felony that was the object of the conspiracy, murder is not beyond the scope of the conspiracy. *Id*.

Appellant does not dispute that, as an accomplice to co-defendant, he is criminally liable for any actions they took in furtherance of the robbery. *See* Appellant's brief at 30-31. Appellant also agrees that he engaged in a conspiracy to commit robbery with co-defendant. *Id*. However, Appellant argues that the Commonwealth failed to demonstrate that the killing was committed in perpetration of or in order to facilitate the robbery, requirements common to both accomplice and co-conspirator liability. *Id*. We disagree.

Here, the evidence, viewed in the light most favorable to the Commonwealth, showed that the victim was killed while Appellant and co-defendant were still in the midst of committing their planned robbery. ***See*** 18 Pa.C.S. § 3701(a)(2) ("an act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft **or** in flight after the attempt or commission.") (emphasis added). At trial, the Commonwealth presented evidence that Appellant formulated the plan to rob the victim with co-defendant. ***See*** N.T. Jury Trial, 6/21-23/21, at 134, 170-72, 206-61. The evidence also demonstrated that Appellant lured the victim to his residence under the guise of friendship. ***Id***. at 201-04, 210-12, 238-41. Appellant then retrieved his co-conspirator, bringing him to the victim's exact location, and stood by while co-defendant took the victim's wallet, cell phone, and keys at gunpoint. ***Id***. at 220, 242, 262-63. Afterwards, co-defendant forced the victim into the trunk and the two men drove the vehicle a short distance away, before co-defendant executed the victim. ***Id***. at 261-63. The two men then continued their flight together, attempting to retrieve funds from an ATM with the victim's credit card before going their separate ways. ***Id***. at 230-34, 242. Accordingly, co-defendant's murder of the victim eliminated the only witness to the robbery, thereby facilitating their flight and providing the men time to access the victim's bank account before the authorities were alerted.

Thus, the record supports the jury's inference that the victim was shot, if not during an effort to steal his vehicle, at least to aid in their escape. ***See***

*Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa.Super. 2020) (*en banc*) (finding evidence sufficient to support robbery and second-degree murder convictions where Appellant's cohort perpetrated a killing to aid their escape); *see also Commonwealth v. Kelly*, 10 A.2d 431, 433 (Pa. 1940) ("There is a unity of criminal action between the planning of a crime, its execution or attempted execution and the flight from the scene."). Appellant knew, or should have known, that the possibility of death to the victim accompanied the dangerous undertaking of an armed robbery. The jury determined, as was its right, that the killing was in furtherance of the conspiracy to commit robbery. *See also Commonwealth v. Lambert*, 795 A.2d 1010, 1023 (Pa.Super. 2002) ("The question of whether the killing was committed in furtherance of the felony is a question of proof for the jury to resolve.").

Appellant counters that *Commonwealth v. Waters*, 418 A.2d 317 (Pa. 1980), supports his position that the Commonwealth failed to establish a "causal link" between the robbery and killing. *See* Appellant's brief at 21-23. However, Appellant's reliance is misplaced. In *Waters*, a murder was committed during the perpetration of a burglary where Waters was an accomplice and not the actual killer. However, unlike herein, in *Waters*, it was established that the killer had slayed the victim due to a personal reason independent of the burglary. Waters revoked his participation in the burglary, killed the slayer to thwart its continuation, and called 911 to summon

emergency medical treatment for the victim while he was still alive. Herein, Appellant never attempted to abandon the robbery. Instead, his actions after the shooting indicated a continued convergence in purpose between Appellant and co-defendant.

Furthermore, the question of the sufficiency of the evidence was not before the *Waters* Court. Instead, the court considered whether the trial court erred by denying a request to issue a jury instruction requiring the Commonwealth to prove "a conspiratorial design by the slayer and others to commit the underlying felony and of an act by the slayer causing death which was in furtherance of the felony." After determining that this deficiency in the instructions was an error, the *Waters* Court remanded for a new trial. *Id*. at 317. However, herein, it is undisputed that the trial court issued the proper instructions for second-degree murder and detailed the two means by which Appellant could be held responsible: accomplice liability or co-conspirator liability. *See* N.T. Jury Trial, 6/21/21-6/23/21, at 378-92. Thus, the *Waters* holding has no bearing on whether the Commonwealth presented evidence of a causal nexus between the robbery and the killing in this case. Accordingly, Appellant's argument is meritless.

Viewed in the light most favorable to the Commonwealth as verdict winner, we find that the evidence was sufficient to uphold Appellant's conviction for second-degree murder.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2022