J-A26003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RACHEL LYNN EDDY, | |
| Appellant | No. 1813 WDA 2015 |

Appeal from the Judgment of Sentence Entered May 18, 2015
In the Court of Common Pleas of Greene County
Criminal Division at No(s):  CP-30-CR-0000184-2014

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED NOVEMBER 7, 2016**

Rachel Lynn Eddy appeals from the judgment of sentence of an aggregate term of 12 months' probation, plus $163.20 in restitution, imposed after she was convicted of theft by unlawful taking, 18 Pa.C.S. § 3921(a), conspiracy to commit theft, 18 Pa.C.S. § 903(a)(1), and tampering with evidence, 18 Pa.C.S. § 4910(1).  After careful review, we reverse Eddy's convictions for theft and conspiracy, but affirm her conviction for tampering with evidence.

This Court previously summarized the evidence presented at the joint trial of Eddy and her co-defendant, Jesse James Tinsley, as follows:

> On April 6, 2014, Brian Yeager ("Yeager") saw a red truck with square headlights, possibly a 1982-era GMC, driving away from Levine's Iron & Metal around 11:00 p.m.  *See* N.T., 3/3/15, at 33-34.  Yeager testified that the truck did not have its lights on, left at a high rate of speed, and appeared to have scrap metal in the bed of the truck.  *Id.* at 33-34, 39, 41-42, 45.

After Yeager saw the truck head west, he returned inside and called the police. *Id.* at 34. Thereafter, Yeager called Larry Levine ("Levine"), owner of Levine's Iron & Metal, to tell Levine what he witnessed. *Id.* at 34-35, 96-97.

James Babirad ("Trooper Babirad"), a Pennsylvania State Trooper, reported to Yeager's call. *Id.* at 52-53. Trooper Babirad drove toward West Waynesburg to search for the reported truck, but did not locate the vehicle in that area. *Id.* at 53. As Trooper Babirad was returning to the police station, he noticed a truck that matched Yeager's description parked in front of a house. *Id.* at 54. Trooper Babirad noted some scrap metal in the bed of the truck before knocking on the door of the residence. *Id.* Rachel Eddy ("Eddy"), Tinsley's co-defendant,[2] answered the door and told Trooper Babirad she was the only person to drive the truck that day, and that she returned home around 10:00 p.m. *Id.* However, Trooper Babirad had not observed the truck parked at the house on his way into West Waynesburg approximately 15 minutes earlier. *Id.* at 55. After seeing several other people in the home, Trooper Babirad asked if Tinsley was home. *Id.* at 55, 84-85. Tinsley came to the door and confirmed that Eddy was the only person who drove the truck that day. *Id.* at 55-56. Trooper Babirad asked Tinsley and Eddy about the scrap metal in the truck and advised them of why he was asking about the scrap metal. *Id.* at 58.

[2] Tinsley and Eddy live together with Eddy's family. *See* N.T., 3/3/15, at 162.

Thereafter, Trooper Babirad told Tinsley and Eddy not to do anything with the scrap metal, and he returned to the police barracks to get a camera in order to photograph the metal in the bed of the truck. *Id.* at 60. The police contacted Levine and asked him to come to Eddy and Tinsley's residence in order to view the scrap metal in person. *Id.* at 60, 97, 104-05. Trooper Babirad returned to the residence around 15 minutes later, but noticed that some of the scrap metal had been moved out of the bed of the truck, and a silver grate that had previously been in the truck was missing. *Id.* at 61, 87. After Tinsley showed Trooper Babirad where the missing silver grate was located in the basement, Trooper Babirad photographed all of the scrap metal, as well as the truck. *Id.* at 61-62, 77-78. Subsequently, Levine arrived at the residence to inspect the scrap metal. *Id.* at 69, 97-98. Although he does not keep an inventory of his scrap yard, Levine reported that the material in question

appeared to be similar to scrap metal that was dropped off at his facility two days prior. *Id.* at 106, 112-13. Trooper Babirad told Tinsley and Eddy not to do anything with the scrap metal until it could be investigated further, and left for the night. *Id.* at 70.

After beginning his usual 4:00 p.m. shift the following day, Trooper Babirad noticed Tinsley driving the truck, with Eddy as a passenger, around 4:30 p.m. *Id.* at 70-71, 94. Trooper Babirad observed that none of the scrap metal was in the bed of the truck, so he turned around and met Tinsley and Eddy at their residence to speak with them. *Id.* at 71. Eddy notified Trooper Babirad that she took the scrap metal to a different scrap yard, Jack's Recycling, early that morning to get money. *Id.* at 72, 94. Trooper Babirad called Jack's Recycling and confirmed Eddy's statement. *Id.* at 123. Trooper Babirad then met Levine at Levine's Iron & Metal, and Trooper Babirad took photos of a pile of scrap metal with pieces similar to those found at the Tinsley and Eddy residence. *Id.* at 73-76. Trooper Babirad also took photos of tire impressions in the mud located at Levine's Iron & Metal. *Id.* at 77.

***Commonwealth v. Tinlsey***, No. 1776 WDA 2015, unpublished memorandum at 1-4 (Pa. Super. filed Aug. 31, 2016).

Based on this evidence, a jury convicted both Eddy and Tinsley of the above-stated offenses. On May 18, 2015, Eddy was sentenced to concurrent terms of 12 months' probation for each of her three offenses. The court also imposed restitution in the amount of $246 to be paid to Levine's Iron and Metal. Eddy filed a timely post-sentence motion challenging the amount of restitution imposed by the court, and also seeking an arrest of judgment and/or a new trial. On October 13, 2015, the court denied Eddy's request for an arrest of judgment and/or new trial, but granted her claim regarding restitution, amending the original sentencing order to impose $163.20 in restitution for Eddy's theft offense.

Eddy filed a timely notice of appeal with this Court, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, she presents three questions for our review, which we have reordered for ease of disposition:

1. Was there insufficient evidence beyond a reasonable doubt to prove that Appellant Rachel Eddy committed the crimes of Theft and Conspiracy to Commit Theft? Was the verdict against the weight of the evidence?

2. Was there insufficient evidence beyond a reasonable doubt to convict Appellant Rachel Eddy of the crime of Tampering with Evidence as there was no evidence of a specific intent to hinder a police investigation? Was the verdict against the weight of the evidence?

3. Where [Eddy] was convicted of a[] [misdemeanor] 3 theft of property not greater than $50 in value instead of $203.00 alleged in the information, where no evidence of value was submitted to the jury, did the [c]ourt err and abuse its discretion by (a) sentencing [Eddy] to pay [restitution] in the amount of $246.00 upon considering a hearsay estimate over objection at the sentencing hearing and (b) by modifying the award to $163.20?

Eddy's Brief at 7.

We begin by addressing Eddy's sufficiency-of-the-evidence claims.

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Eddy first challenges the sufficiency of the evidence to sustain her convictions of theft by unlawful taking and conspiracy to commit theft by unlawful taking. Theft by unlawful taking is defined as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with the intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Additionally, "[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he … [] agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime…." 18 Pa.C.S. § 903(a)(1). This Court has declared that "[t]he essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (citation omitted). "Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to demonstrate criminal conspiracy. *Id.* (citation omitted).

Initially, we must address the fact that Eddy's co-defendant, Tinsley, also appealed to this Court from his judgment of sentence, and we filed a decision in Tinsley's case in August of 2016. As in Eddy's present appeal, Tinsley also challenged the sufficiency of the evidence to support his convictions for theft, conspiracy, and tampering with evidence. Ultimately, this Court concluded that the evidence failed to prove that Tinsley

committed any of those crimes. Specifically, we first concluded that the evidence was insufficient to convict Tinsley of theft, stating:

> The uncontroverted evidence suggests that Eddy was the only person who drove the truck on April 6, 2014. **See** N.T., 3/3/15, at 54, 56. There was no evidence placing Tinsley at the scrapyard or handling the scrap metal. **Further, the Commonwealth did not demonstrate that the scrap metal stolen was the same as the scrap metal found in the truck.** Finally, there was also no evidence that Tinsley was an accomplice. Thus, the evidence was insufficient to support a conviction of theft by unlawful taking.

**Tinsley**, No. 177 WDA 2015, at 6-7 (emphasis added).

Here, even though the evidence was sufficient to show that Eddy possessed the scrap metal in the truck she was driving on April 6, 2014, we cannot ignore this Court's conclusion in **Tinsley** that the Commonwealth failed to prove that the scrap metal in her truck was same metal taken from Levine's business. Because this panel is bound by the **Tinsley** panel's decision on this issue, we must also conclude that the evidence failed to prove that Eddy committed theft by unlawful taking.

Likewise, we are also required to reverse Eddy's conviction for conspiracy to commit theft. In reversing Tinsley's conviction for that offense, the **Tinsley** panel found that,

> there [was] no evidence of any agreement between Tinsley and Eddy. The fact that Tinsley and Eddy live together, and were seen in the truck together the following day, merely evidences their association. **See** [**Lambert**, 795 A.2d at 1016.] Thus, the evidence is insufficient to support a conviction of criminal conspiracy to commit theft.

***Tinsley***, No. 177 WDA 2015, at 7-8. Again, we are bound by the ***Tinsley*** panel's decision; thus, we conclude that the evidence was insufficient to establish that Eddy agreed with Tinsley to commit theft by unlawful taking. Therefore, we reverse Eddy's conspiracy conviction.

However, we are not bound to reverse Eddy's conviction for tampering with evidence. While we reversed Tinsley's conviction for that offense, in doing so, we stated:

> A person is guilty of tampering with physical evidence "if, believing that an official proceeding or investigation is pending or about to be instituted, he … alters, destroys, conceals or removes any record, document or things with intent to impair its verity or availability in such proceeding or investigation." 18 Pa.C.S.A. § 4910(1).
>
> Here, Trooper Babirad testified that he "just said sit tight" when he left to retrieve the camera. N.T., 3/3/15, at 60. Subsequently, Trooper Babirad testified that he "advised [Tinsley and Eddy] not to do anything with the scrap until [he had conducted] further investigation" before leaving the house at the end of the night. ***Id.*** at 70. Although Trooper Babirad [was] uncertain of his "exact words" at certain points, he [knew] he "told [Tinsley and Eddy] there was an investigation." ***Id.*** at 86.
>
> Assuming Tinsley knew that the items were under investigation, the Commonwealth failed to prove that Tinsley participated in the alteration, destruction, concealment or removal of the scrap metal in [an] attempt to impair its availability. ***See*** 18 Pa.C.S.A. § 4910[(1)]. In point of fact, ***Eddy told Trooper Babirad that she took the metal to Jack's Recycling on the morning of April 7, 2014.*** N.T., 3/3/15, at 94, 122. There is no evidence that Tinsley assisted or knew about Eddy's actions. As such, the evidence of record is insufficient to support a conviction of tampering with physical evidence.

***Tinsley***, No. 177 WDA 2015, at 8-9.

Clearly, the **Tinsley** panel reversed Tinsley's conviction for tampering with evidence because the Commonwealth failed to prove that Tinsley had any involvement in selling the scrap metal. The same is not true for Eddy, who admitted to Trooper Babirad that she sold the metal to Jack's Recycling. Additionally, Trooper Babirad's testimony that on April 6, 2014, he told Eddy that an investigation regarding the scrap metal was underway was sufficient to demonstrate that Eddy knew about the pending investigation when she sold the metal on April 7, 2014. Finally, Eddy's decision to sell the scrap metal, despite the trooper's direction not to do anything with the metal until he conducted further investigation, was sufficient to infer that Eddy sold the metal "with intent to impair its … availability" in that investigation. 18 Pa.C.S. § 4910(1). Accordingly, the evidence was sufficient to support Eddy's conviction for tampering with evidence.[1]

_____

[1] While Eddy's "Statement of the Questions Involved" indicates that she is also challenging the weight of the evidence to support her conviction of tampering with evidence, she does not provide any argument on this issue. Accordingly, her weight-of-the-evidence claim is waived. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

In Eddy's final issue, she challenges the legality of her sentence of restitution. However, it is apparent that the restitution sentence was imposed for Eddy's theft conviction. *See* 18 Pa.C.S. § 1106(a) ("Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor."). Because we have reversed Eddy's theft conviction, her sentence of restitution must be vacated, and her claims pertaining to the legality of that sentence are moot.

In sum, because the evidence was insufficient to support Eddy's convictions of theft by unlawful taking and conspiracy to commit theft by unlawful taking, we reverse those convictions and vacate her sentences for those offenses, including her sentence of restitution. However, we affirm Eddy's conviction for tampering with evidence. Because Eddy received concurrent terms of 12 months' probation for each of her three offenses, our vacating two of those terms of probation does not upset the overall sentencing scheme of the trial court. Consequently, we need not remand for resentencing.

Judgment of sentence reversed in part, affirmed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/2016