J-A02035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TARIQ MAHMUD | : | |
| Appellant | : | No. 1589 EDA 2015 |

Appeal from the Judgment of Sentence May 1, 2015
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0007123-2013

BEFORE: OTT, RANSOM, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 08, 2017**

Appellant, Tariq Mahmud, appeals[1] from the judgment of sentence entered in the Delaware County Court of Common Pleas after a jury found him guilty of murder of the second degree,[2] robbery,[3] and conspiracy.[4] Appellant claims, *inter alia*, that the evidence was insufficient to sustain the second-degree murder conviction and that the Commonwealth's closing argument was improper.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The appeals of Appellant's codefendants, Rita Elizabeth Pultro and David Wiggins, are listed at J-A02036-17 and J-A02037-17, respectively.

[2] 18 Pa.C.S. § 2502(b).

[3] 18 Pa.C.S. § 903.

[4] 18 Pa.C.S. § 903.

Appellant's conviction arises from the killing of Jason McClay at a Rite Aid store in the City of Chester, where McClay was a manager. The Commonwealth alleged the following. In August and September 2013, Appellant was employed as loss prevention agent at the Rite Aid store. Appellant, Ashaniere White, and Christopher Parks planned to rob the Rite Aid store. Appellant told White and Parks about how much money was kept in the store's safe, who was working, and about blind spots in the store's video surveillance system. Appellant warned them not to try to rob the store when McClay was working, because he was a former marine who would fight back.

On August 19, 2013, White and Parks robbed the Rite Aid store when McClay was not on duty. On August 26 and September 4, 2013, White and Parks again attempted to rob the store, but abandoned those plans when employees recognized White.

Appellant, White, and Parks thereafter sought the assistance of new people to rob the store, and they brought David Wiggins into their planning. Wiggins wanted another individual, Rita Pultro, to participate as well. The group planned a robbery for September 18, 2013, but postponed it until September 19, 2013.

On September 19, 2013, McClay worked the day shift at the Rite Aid store and stayed for the evening shift due to the unavailability of another manager, Serita Cottman. Appellant called out from work that day. At

approximately 9:45 p.m., an employee saw a white female, later identified as Pultro, and a black male, later identified as Wiggins, enter the store. Pultro retrieved a light bulb and took it to the counter. When the employee told her the amount due, Pultro complained that it was too expensive, placed the item back on the shelf, and asked to see the manager. McClay went back to the aisle, and he and Pultro began discussing lightbulbs. Wiggins then grabbed McClay and told him to take him to the safe. Wiggins and McClay began wrestling. Pultro shot McClay at close range at the base of his neck and killed him. Wiggins and Pultro fled from the store and left the scene in a vehicle driven by Parks.

The investigation into the shooting revealed that Wiggins left a palm print in the Rite Aid store. Investigators obtained a photograph of Wiggins and showed it to two employees, and they both identified Wiggins as one of the robbers. Wiggins was arrested on September 21, 2013, and admitted his role in the robbery. Pultro was arrested on September 22, 2013. Appellant was interviewed by police on September 22, 2013, and turned over his cell phone that day. Appellant was arrested on October 2, 2013. Parks and White were also arrested. Parks and White subsequently entered guilty pleas to third-degree murder in exchange for their cooperation, and the Commonwealth dropped the charges of second-degree murder against them.

Appellant, Pultro, and Wiggins proceeded to a joint jury trial for the September 19, 2013 robbery and killing of McClay. Parks and White testified against them. The Commonwealth also introduced numerous text messages between the parties. The jury found Appellant guilty of second-degree murder, robbery, and conspiracy. The trial court sentenced Appellant to life imprisonment on May 1, 2015.

Appellant timely appealed and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. This appeal followed.

Appellant sets forth the following issues for review:

> Appellant's conviction for Murder of the 2nd degree should not stand where the evidence was he was neither "engaged as the principal or an accomplice in the perpetration of a felony" as required by the Felony Murder statute, especially since pursuant to long standing Pennsylvania case law, accomplice liability and conspiracy are not one and the same.

> Improper prosecutorial closing remarks prejudiced [Appellant] by expressing a personal opinion as to guilt and the testimony of Commonwealth witness Detective Tyler was improper when he was permitted to state in front of the jury that he was trying to get the truth and he related off-audio events in regards to his taped interview of [Appellant].

Appellant's Brief at 6.

Appellant first claims that the evidence was insufficient to find him guilty of second-degree murder. He presents a purely legal argument based on the distinction between accomplice and conspiratorial liability regarding second-degree murder. Additionally, Appellant asserts that the jury

- 4 -

instruction on second-degree murder and accomplice and conspiratorial liability were confusing. He concludes that "[t]he evidence in this case reveals that [his] conviction for 2nd degree murder should not stand since he was not at the Rite Aid at the time of the robbery and the unexpected homicide, he was not engaged in the facilitation of the murder, and accomplice liability and conspiracy are not one and the same." Appellant's Brief at 11. No relief is due.

Our review is governed by the following principles:

> We consider that evidence in a light most favorable to the Commonwealth, drawing all reasonable inferences in favor of the Commonwealth. The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." Only where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" is a defendant entitled to relief. We do not "re-weigh the evidence and substitute our judgment for that of the fact-finder." As the question of the sufficiency of the evidence is one of law, we consider the evidence *de novo*.

> Second-degree murder, commonly known as felony murder in Pennsylvania, requires a homicide committed while the "defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). The Crimes Code further defines the perpetration of a felony, relevant herein, as, "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery[.]" 18 Pa.C.S. § 2502(d). The General Assembly has further provided that,

> > A person is an accomplice of another person in the commission of an offense if:

> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
>> (i) solicits such other person to commit it; or
>>
>> (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.

*Commonwealth v. Mitchell*, 135 A.3d 1097, 1101-02 (Pa. Super. 2016) (some citations and footnote omitted). "The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim." *Commonwealth v. Lambert*, 795 A.2d 1010, 1022 (Pa. Super. 2002) (*en banc*) (citations omitted).

In *Lambert*, this Court discussed culpability for second-degree murder as follows:

> [t]he responsibility of persons, other than the slayer, for a homicide committed in the perpetration of a felony require[s] proof of a conspiratorial design by the slayer and the others to commit the underlying felony and of an act by the slayer causing death which was in furtherance of the felony.

> Moreover, . . . :

> When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact the actor was engaged

in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, knew or should have known that death might result from the felony. (footnote omitted)

[O]ur Supreme Court explained that not only the killer, but all participants in a felony, including the getaway driver, are equally guilty of felony murder when a killing by a felon occurs.

The statute defining second degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. It does not matter whether [a defendant] anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether [a defendant] knew or should have known that the possibility of death accompanied a dangerous undertaking.

*Id.* 1023 (citations omitted)

Instantly, our review of the record reveals that Appellant exchanged text messages with White regarding the previous robbery that occurred on August 19, 2013, including messages telling her which exit to take when driving to the store, the time when the money was dropped into the safe, the amount taken in that robbery, as well as Appellant's suggestion that next time they go to the safe. N.T., 2/4/15, at 232-35. Appellant also told Parks about the video surveillance in the store and to avoid the "white guy" who "was in the Marines." N.T. 2/5/15, at 289.

With respect to the September 19, 2013 robbery at issue in this case, White texted Appellant on September 18, 2013, asking "We still hitting your job?" N.T., 2/4/15, at 280. Appellant responded "today or tomorrow" and later indicated "whenever we get a ride." *Id.* at 280. When White asked, "How much we looking at," Appellant noted, "If we went tonight [September 18, 2013], like 3 or 4. Tomorrow like 4, maybe 5, if you all get the registers." *Id.* at 284. Additionally, Parks, who drove Wiggins and Pultro to the Rite Aid on September 19, 2013, texted Appellant asking him how much money was in the store. N.T., 2/5/15, at 333, 359. Appellant replied, "four maybe five."[5] *Id.* at 333, 359.

Following our review, we find overwhelming evidence supporting the jury's conclusion that Appellant acted with the intent to facilitate the September 19, 2013 robbery and aided Parks, Wiggins, and Pultro in planning and committing it. Appellant's further arguments based on the distinctions between conspiratorial and accomplice liability warrants no relief, as it misconstrues the basis for culpability for second-degree murder based on his participation in the robbery versus the killing. *See Lambert*, 795 A.2d at 1022-23. Therefore, Appellant's sufficiency of the evidence claim fails.

---

[5] The time stamp for this text was 9/20/2013, 12:30:19 hours a.m. UTC time.

As noted above, Appellant also claims that the trial court's charge regarding second-degree murder, accomplice liability, and conspiratorial liability was confusing. We are constrained to find this claim waived because Appellant did not challenge the propriety of the jury instruction in his Rule 1925(b) statement.[6] *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Appellant next claims that the prosecutor improperly expressed personal opinions during closing arguments. Appellant also claims that a Commonwealth witness, a police detective, improperly testified that he was "trying to get to the truth." Appellant's Brief at 18 (quoting N.T., 2/9/15, at 174). We find these issues waived and, in any event, meritless.

Pennsylvania Rule of Criminal Procedure 605 states: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed.

---

[6] Appellant's attempt to nest a challenge to the jury instructions within his argument regarding the sufficiency of the evidence also violates several rules of appellate procedure regarding the contents of a brief. *See* Pa.R.A.P. 2116(a) (regarding the statement of questions involved), 2117(c) (regarding a statement of place of raising or preserving issues for review), 2119(a) (requiring the argument "be divided into as many parts as there are questions to be argued").

We note, however, that the trial court's use of the term "partners" and references to accomplice and conspiracy liability are consistent with *Lambert*, and the overall instruction was similar to those in the standard suggested jury instruction for second-degree murder. *See* Pa.SSJI (Criminal) § 15.2502B, Second Alternative, ¶¶ (2), (4) (2016).

Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(b). "[E]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa. Super. 2013) (citation and quotation marks omitted).

We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Brown*, 134 A.3d 1097, 1106 (Pa. Super.) (citation omitted), *appeal denied*, 145 A.3d 161 (Pa. 2016). As to a prosecutor's improper remark during closing arguments, the Pennsylvania Supreme Court has stated:

> In reviewing an assertion of prosecutorial misconduct, our inquiry "center[s] on whether the defendant was deprived of a fair trial, not deprived of a perfect trial." . . . [T]his Court has permitted vigorous prosecutorial advocacy provided that "there is a reasonable basis in the record for the [prosecutor's] comments." A prosecutor's remarks do not constitute reversible error unless their unavoidable effect would prejudice the jurors, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Finally, we review the allegedly improper remarks in the context of the closing argument as a whole.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1109-10 (Pa. 2012) (citations omitted).

Appellant's challenges to the Commonwealth's closing arguments arose in the following context:

- 10 -

[Commonwealth:] Just because he [Appellant] wasn't there doesn't mean he wasn't a part of this Conspiracy and just because he didn't intend for his co-worker to die doesn't mean he's not guilty of Felony Murder. Felony Murder, when two people are partners in an unsuccessful Robbery, two or more people are partners in an unsuccessful Robbery and someone is killed it doesn't matter a lick. And I mean that not in a Robbery sense, whether he intended, she intended, anything. So go back. Here's the plan, ladies and gentlemen, here's my plan. Take seven days of evidence, 105 exhibits and the overwhelming evidence of their scheme to steal from the Rite Aid that cost a man his life and go back and find them guilty. And I'll be honest with you ladies and gentlemen, I don't know if I'm going to get reprimanded for this or not. You go back and you struggle as to whether she [Pultro] was the trigger person, the Judge will instruct you, it matters not. Think about it, she shot him. She did it with specific intent. There's premeditation. But in reality this is Felony Murder and **if you go below that then I failed to do my job**.

[Appellant's counsel]: Objection to that last comment.

THE COURT: Sustained.

[Appellant's counsel]: Move to strike it.

THE COURT: We'll strike that moot.

[Commonwealth]: There's one more thing and then I'm done. [Wiggins' counsel] brought it out. She says the Commonwealth really doesn't know what it's going to hear because now it's throwing in Third Degree Murder and Robbery and Conspiracy. It can't decide what it wants to do. And again, whether it's intentional or not, this is [Wiggins' counsel] ignoring the law. For whatever reason I have failed to convince you of Felony Murder the Judge will instruct you you go down to the next level of Murder. If during the course of this trial I had not charged and sent out Third Degree Murder, Robbery and Conspiracy there's a principle of law in Pennsylvania called All Three Joinder. I'm merely telling you this so you don't think I'm stupid and why I'm sending all this out. There's a thing called

> Compulsory Joinder. So for whatever reason you conclude I haven't proven Felony Murder and I submit to you I have, **I look forward to one day leaving this job and if I ever teach I'm going to use this case as an example of Felony Murder**.
>
> [Appellant's counsel]: Objection.
>
> THE COURT: Overruled. Go ahead. Let's get to the point.

N.T., 2/10/15, at 123-125 (emphases added). Although Appellant's counsel objected, he did not request a mistrial after closing arguments concluded, in a post-sentence motion, or at any time in between. Therefore, Appellant's challenge to the prosecutor's reference to failing his job or teaching the case as an example of second-degree murder may be deemed waived. **See Sandusky**, 77 A.3d at 670.

In any event, the trial court found that it properly sustained Appellant's objection to the prosecutor's reference to failing his job and granted his request to strike the comment. Trial Ct. Op., 5/18/16, at 14. The trial court further concluded that the second comment regarding teaching the case as an example of second-degree murder was permissible oratorical flair and did not have the unavoidable effect of prejudicing the jurors. **Id.** In light of the overwhelming evidence supporting Appellant's convictions, we discern no basis on which to conclude that the Commonwealth's arguments prejudiced the ability of the jury to weigh the evidence objectively and render a fair verdict. **See Sneed**, 45 A.3d at 1110. Thus, Appellant's claim of prosecutorial misconduct warrants no relief.

Lastly, Appellant includes a claim that he was entitled to a mistrial based on a detective's testimony he was trying to get to the truth of the matter when interviewing Appellant. The statement arose in the following excerpt of the Commonwealth's direct examination of Detective David Tyler:

> [Commonwealth:] And how long do you think you talked to [Appellant] off tape prior to going on tape?
>
> A Hour and a half, maybe more.
>
>             ***
>
> Q When you were talking to [Appellant], why the hour and a half off tape? What were you trying to ask him about?
>
> A We were trying to get to the truth.
>
>             ***
>
> [Appellant's counsel]: Objection.
>
> THE COURT: Sustained.
>
> [Appellant's counsel]: Move to strike.
>
> THE COURT: We'll strike the answer.

N.T., 2/9/15, at 174. At the opening of trial, the trial court gave the jury a general instruction of its duty not to consider as evidence questions or answers to which the court sustained objections. N.T., 1/30/15, at 61.

Again, the record does not show that Appellant requested a mistrial based on this testimony, and Appellant's present claim may be deemed waived. *See Sandusky*, 77 A.3d at 670. Nevertheless, we find no relief is due.

When reviewing whether an improper remark by a witness warrants a mistrial, this Court considers the prejudicial nature of the remark, whether the Commonwealth intentionally elicited the remark, and whether the trial court issued a curative instruction. *See Commonwealth v. Ford*, 607 A.2d 764, 766 (Pa. Super. 1992) (discussing references to a defendant's prior criminal record).

Instantly, it is apparent the Commonwealth did not intentionally elicit the detective's remark. Moreover, the nature of the witness' remark was not so prejudicial as to undermine the objectivity of the jurors or the fairness of trial. Similarly, having reviewed Appellant's arguments and the record, there is no basis to conclude that the combination of these alleged acts of misconduct would entitle Appellant to a new trial in light of the overwhelming evidence against him.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017

- 14 -