J-S26002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID JAMES MCCLELLAND | : | |
| | : | |
| Appellant | : | No. 386 WDA 2019 |

Appeal from the PCRA Order Entered February 5, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001884-2011

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.: FILED JULY 29, 2020

David James McClelland (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful consideration, we vacate the order dismissing Appellant's PCRA petition and remand this matter to the PCRA court for proceedings consistent with this decision.

The PCRA court detailed the facts and procedural history of this case as follows:

### Factual History

On August 4, 2009, Chief Rick Encapera of the California Borough Police Department responded to the home of Evelyn Stepko (hereinafter [] "Victim") located on Pike Run Road in Coal Center, Washington County to investigate her complaint that her home had been burglarized and that an envelope containing $2,000 in cash was missing. On June 15, 2010, Chief Encapera

_____

[*] Retired Senior Judge assigned to the Superior Court.

again responded to the Victim's home to investigate her complaint that her home had been burglarized again and her lifesavings had been stolen. During this second investigation, Chief Encapera discovered a lock on the closet that had been tampered with, a basement door with a lock that had been tampered with, and a screen window that was unsecured. On February 2, 2011, Patrolman Timothy Sheehan of the California Borough Police Department responded to [] Victim's home to investigate her complaint that her home was burglarized and $600 was stolen. On March 10, 2011, Patrolman Sheehan again responded to the Victim's home to investigate her complaint of another burglary. During this investigation, Patrolman Sheehan discovered splintering in the door frame to the basement which was not there when he investigated in February. On May 22, 2011, Officer Curtis Rice of the California Borough Police Department responded to [] Victim's home to investigate the report that the telephone wires to [] Victim's home had been cut and severed.

On July 18, 2011, first responders were dispatched to the residence of [] Victim because she had not been seen in a few days. Upon entering the residence, first responders discovered [] Victim's body at the bottom of the stairs to the basement, lying face down in a pool of blood. An autopsy conducted by the Washington County Coroner, S. Timothy Warco, revealed that [] Victim died as a result of stab wounds to her neck. The death was ruled a homicide. As part of the investigation, [Appellant]'s father was arrested and charged with multiple offenses including homicide, robbery, burglary, and conspiracy. [Appellant]'s stepmother was also arrested and charged with multiple offenses including conspiracy to commit homicide and conspiracy to commit burglary.

On July 22, 2011, as part of the investigation into [] Victim's death, [Appellant] was brought into the California Borough Police Department to be interviewed by the Pennsylvania State Police. During the interview, [Appellant] made various admissions tying him to the criminal activity in question.

*     *     *

Procedural History

On October 3, 2011, the Washington County District Attorney's Office filed a criminal information charging [Appellant] as follows:

Count 1: Criminal Homicide – 18 Pa.C.S.[A.] § 2501(a) - Felony of the 1st Degree

Count 2: Dealing in Proceeds of Unlawful Activities – 18 Pa.C.S.[A.] § 5111(a)(1 and 2) – Felony of the 1st Degree

Count 3: Criminal Conspiracy – 18 Pa.C.S.[A.] § 903 – Felony of the 1st Degree

Count 4: Receiving Stolen Property – 18 Pa.C.S.[A.] § 3925(a)- Felony of the 3rd Degree.

On October 19, 2011, Daniel Chunko, Esquire entered his appearance on behalf of [Appellant]. On June 13, 2012, an order was entered transferring the case from the Honorable Judge Paul Pozonsky to the undersigned.

\* \* \*

On November 5, 2012, the trial court granted defense counsel's request to withdraw and appointed Joshua Camson, Esquire [(Trial Counsel)] to represent [Appellant]. . . . On April 9, 2013, following a jury trial, [Appellant] was convicted of Criminal Homicide-Second Degree Murder, Dealing in Proceeds of Unlawful Activities, Criminal Conspiracy, and Receiving Stolen Property. . . .On June 16, 2013, the trial court sentenced [Appellant] . . . [to] life in prison without the possibility of parole plus 14 years to 48 years.

. . . On November 1, 2013, [Trial Counsel] filed a direct appeal on behalf of [Appellant], appealing the judgment of sentence entered June 6, 2013. On September 21, 2015, the Superior Court entered an opinion affirming [Appellant]'s judgment of sentence. On May 18, 2016, the Supreme Court of Pennsylvania denied [Appellant]'s Petition for Allowance of Appeal.

On August 1, 2017, Suzanne Swan, Esquire filed a [PCRA petition] on behalf of [Appellant]. . . . On December 19, 2017, the Commonwealth filed their response to [Appellant]'s PCRA petition. On January 11, 2019, the [PCRA] court filed notice of its intent to dismiss [Appellant]'s PCRA petition [without a hearing]. On February 5, 2019, the [PCRA] court issued an order dismissing [Appellant]'s PCRA petition. On March 7, 2019, [PCRA Counsel] filed notice of appeal to the Superior Court appealing the [PCRA]

- 3 -

court's dismissal of [Appellant]'s PCRA petition. On March 20, 2019, the [PCRA] court ordered [Appellant] to file his Concise Statement of Matters Complained of on Appeal within twenty-one (21) days of the order.

On April 1, 2019, Attorney Swan filed a concise statement on behalf of [Appellant.]

PCRA Court Opinion, 7/18/19, at 1-7 (footnotes omitted).

On appeal, Appellant presents five issues for review:

I.     Did the [PCRA] court abuse its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition without a hearing, where [Appellant] set forth an offer to prove sufficient facts upon which a reviewing court can conclude that [T]rial [C]ounsel was ineffective for failing to object to the deficient jury instructions on conspiracy as it related to the felony murder charge?

II.    Did the [PCRA] court abuse its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition without a hearing, where [Appellant] set forth an offer to prove sufficient facts upon which a reviewing court can conclude that [Appellant] was denied the effective assistance of counsel during the plea bargaining stage of his criminal prosecution, specifically, his trial counsel failed to give him adequate, accurate and competent advice about whether to accept or reject a plea offer?

III.   Did the [PCRA] court abuse its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition without a hearing, where [Appellant] set forth an offer to prove sufficient facts upon which a reviewing court can conclude that [T]rial [C]ounsel was ineffective for not requesting a change of venue based on pretrial publicity, and for not requesting that the prospective jurors be questioned regarding their impartiality after hearing a potential juror express his belief that [Appellant] was guilty; alternatively, that [Appellant] set forth an offer to prove sufficient facts that [Trial Counsel] was ineffective for not raising the issue on appeal that the court abused its discretion in denying a motion for change of venue?

IV.    Did the [PCRA] court abuse its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition

without a hearing, where [Appellant] set forth an offer to prove sufficient facts upon which a reviewing court can conclude that [Trial Counsel] was ineffective for failing to preserve the issue for appeal that the evidence was insufficient as a matter of law to sustain the convictions of Criminal Conspiracy to Commit Burglary or Robbery, Conspiracy to Commit Homicide – Second[-]Degree Murder, and Second[-]Degree Murder?

Appellant's Brief at 4-5.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." Commonwealth v. Busanet, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." Id.

Each of Appellant's issues raise claims of ineffective assistance of counsel. With respect to such claims, our Supreme Court has stated:

It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. Commonwealth v. Cooper, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." Id. A PCRA petitioner must address each of these prongs on appeal. See Commonwealth v. Natividad, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the Pierce elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. Cooper, 941 A.2d at 664.

Commonwealth v. Wholaver, 177 A.3d 136, 144 (Pa. 2018) (citations modified).

We address Appellant's second issue first, as it is dispositive of the appeal. Appellant argues that the PCRA court erred in dismissing his claim that Trial Counsel was ineffective during plea negotiations. Appellant contends that Trial Counsel wrongly informed him that to be convicted of murder in this case, "the Commonwealth was required to prove that the death of [Victim] was a natural and probable consequence of any conspiracy." See Appellant's Brief at 24. Appellant asserts that Trial Counsel should have advised him:

> if the Commonwealth proved that [Appellant] conspired with his father to commit burglary or robbery, then it was immaterial whether the homicide was a natural and probable consequence of the burglary. The fact that the murder was committed during the perpetration of the burglary was sufficient to prove Second Degree Murder.

Id.

Appellant further asserts that Trial Counsel wrongly informed him that the Commonwealth could not establish a conspiracy to commit burglary and robbery. Appellant claims that Trial Counsel told him that the evidence only demonstrated that Appellant knew about each of the burglaries and robberies after they occurred, and that he received and spent some of the proceeds of those crimes. Appellant maintains that Trial Counsel advised him that this evidence could not establish a conspiracy to commit burglary and robbery because the Commonwealth could not demonstrate that he knew about or helped plan each of the burglaries and robberies before they occurred.

- 6 -

Appellant argues that Trial Counsel "failed to recognize prior to trial that the Commonwealth was proceeding under the theory that a single, continuing conspiracy existed between Appellant and his father[.]" Appellant's Brief at 25.

Additionally, Appellant faults Trial Counsel for failing to inform him of a substantial amount of inculpatory evidence against Appellant. For example, Appellant asserts that Trial Counsel failed to properly investigate prior to trial the testimony of T.J. Stover, who testified at trial that he observed an individual who resembled Appellant at Victim's home at a time during which Victim was robbed. Appellant's Brief at 30-31. Appellant argues that each of Trial Counsel's alleged deficiencies resulted in his rejection of the Commonwealth's plea offers because Trial Counsel convinced him that, at worst, he was guilty of multiple counts of receiving stolen property.

With respect to this type of claim, we have stated:

[A] post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance:

[B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

\* \* \*

> [N]othing prevents a PCRA petitioner from meeting his burden under Lafler with "his own self-serving statement" that he would have entered a guilty plea but for counsel's ineffectiveness. As long as the PCRA court finds the petitioner's testimony to be credible, there is no coherent justification for characterizing such evidence as inherently deficient as a matter of law. In cases such as the one sub judice, where a petitioner's testimony is credible and uncontradicted, it may suffice to establish a reasonable probability that the petitioner would have accepted the prosecution's plea offer.

Commonwealth v. Steckley, 128 A.3d 826, 832-33 (Pa. Super. 2015) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)).

Appellant has raised several claims that he received deficient advice from Trial Counsel during plea negotiations. First, as Appellant points out, "[o]nce there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy." Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002). "Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." Thus, if Trial Counsel advised Appellant that the Commonwealth had to prove that the Victim's death was a natural and probable consequence of the conspiracy to commit burglary and robbery, in order for Appellant to be convicted of murder, such advice was deficient, as it does not comport with Lambert. As Appellant recognizes, if he was guilty of conspiracy to commit burglary and robbery, he could also be convicted of murder, provided that it was an act committed in furtherance of the conspiracy to commit burglary and robbery. See Lambert, 795 A.2d at 1016.

Second, Appellant presents a correct understanding of the evidence required to establish a conspiracy to commit burglary and robbery. We have explained:

> A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal. . . . A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy. . . . Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

Commonwealth v. Troop, 571 A.2d 1084, 1089-90 (Pa. Super. 1990). Thus, if Trial Counsel told Appellant that the Commonwealth could not establish conspiracy to commit burglary and robbery without evidence that Appellant knew about and helped planned each burglary and robbery, this advice was deficient.

Third, Trial Counsel was arguably ineffective if, as Appellant claims, he did not investigate and advise Appellant about the testimony of T.J. Stover, who stated that he observed an individual resembling Appellant at Victim's home on a date when one of the burglaries and robberies occurred. N.T., 4/5/13, at 744-52. Our Supreme Court has explained:

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure

to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.

Commonwealth v. Johnson, 966 A.2d 523, 535-36 (Pa. 2009). If Trial Counsel, as Appellant asserts, did not investigate or interview T.J. Stover, whose testimony was adverse to Appellant, then Trial Counsel was arguably ineffective.

In rejecting each of Appellant's arguments, the PCRA court explained:

Even if PCRA counsel can show that [T]rial [C]ounsel's legal advice was unsound, the PCRA court does not find that there is sufficient evidence to meet the prejudice prong to prove ineffectiveness. PCRA [C]ounsel maintains that [T]rial [C]ounsel provided [Appellant] with the improper legal standard regarding conspiracy and that counsel did not properly analyze the evidence of the case. This deficiency allegedly resulted in [Appellant] choosing to reject the Commonwealth's plea offers. However, PCRA [C]ounsel seemingly glosses over the fact that [Appellant] rejected a generous plea offer previously extended of ten (10) to twenty (20) years while he was being represented by prior counsel, Daniel Lucian Chunko, Esquire. When presented with this plea offer, [Appellant] maintained his innocence and expressed his desire to proceed to trial. [Appellant]'s conduct under all of the circumstances demonstrated that he was not willing to accept any plea offer regardless of [T]rial [C]ounsel's legal advice. Even after his co-conspirator father pled guilty to 1st degree murder and burglary, and his co-conspirator step-mother was convicted of burglary and conspiracy, [Appellant] chose to proceed to trial. [Appellant] now seeks to turn back the clock and blame the advice of counsel for his decision to reject the plea offers, after having been found guilty at trial. As noted, [Appellant] rejected a generous plea offer before being represented by [T]rial [C]ounsel. The PCRA court is not persuaded by [Appellant]'s claim that he would have accepted the plea offer under any circumstances.

PCRA Court Opinion, 7/18/19, at 17-18 (footnotes omitted).

The PCRA court is correct that Appellant rejected multiple plea offers.

See PCRA Court Opinion, 7/18/19, at 17-18; see also N.T., 10/8/13, at 235-

- 10 -

41. However, the PCRA court denied relief without a hearing. We cannot discern from the record before us evidence of what Trial Counsel advised Appellant during plea negotiations, and the relationship, if any, of Trial Counsel's actions and advice to Appellant's assertions of ineffectiveness. Our review reveals no clear basis for the PCRA court's general conclusion that Appellant's "conduct under all of the circumstances" demonstrated that he was not willing to accept any plea offer regardless of Trial Counsel's advice. PCRA Court Opinion, 7/18/19, at 18.

> We recognize:
>
> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. Commonwealth v. Jordan, 772 A.2d 1011, 1014 (Pa. Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. Id. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

Commonwealth v. Wah, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted).

Instantly, issues of fact exist because we do not have a record of Trial Counsel's actions and advice during plea negotiations, and the basis for the PCRA court's conclusion that Appellant would never have accepted a plea. Thus, our review of Appellant's claims of ineffectiveness is hindered. Our Supreme Court has made "clear [its] strong preference that counsel be heard

from before being found ineffective[.]" Commonwealth v. Colavita, 993 A.2d 874, 895 (Pa. 2010). Also, we may not "employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." Commonwealth v. Barnett, 121 A.3d 534, 540 (Pa. Super. 2015). Mindful of the foregoing, we are compelled to vacate the order dismissing Appellant's petition and remand to the PCRA court for a hearing.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Pellegrini joins the memorandum.

Judge McLaughlin notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2020