J-S38044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTOINE ESKRIDGE | : | |
| | : | |
| Appellant | : | No. 2204 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002195-2022

BEFORE:   STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 23, 2024**

Antoine Eskridge appeals from the April 14, 2023 aggregate judgment of sentence of 5 to 10 years' imprisonment, to be followed by 2 years' probation, imposed after he was found guilty in a bench trial of burglary, criminal trespass, simple assault, recklessly endangering another person ("REAP"), firearms not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia.[1]  After careful review, we vacate Appellant's judgment of sentence for firearms not to be carried without a license and affirm his judgment of sentence in all other respects.

The trial court summarized the relevant facts of this case as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(i), 3503(a)(1)(ii), 2701(a), 2705, 6106(a)(1), and 6108, respectively.

On March 1, 2022, at 8:30pm, Marcia Williams (hereinafter "Ms. Williams") and her three children were in their home on the 1600 Block of N. 60th Street when Mr. Anthony Eskridge (hereinafter "Anthony") appeared alone at the door requesting to see his niece. Anthony explained he was Appellant's brother and recently released from jail, but Ms. Williams allowed him inside her home. Shortly thereafter, Ms. Williams heard kicking and banging on her door with Appellant yelling "I want to see my daughter." Now believing this situation was a set-up, she ordered Anthony out of the house and opened the door for him to exit. Suddenly Appellant barged inside and Ms. Williams called the police. Appellant responded: "Well, since I'm going to jail, I'm going to beat her ass." Ms. Williams grabbed her gun from her purse on a table near the door. Appellant attacked Ms. Williams, throwing her on the ground, punching her head, ripping her clothes and tearing her hair (pieces) out.

Appellant took the gun from Ms. Williams who then saw him run out the house, down the street, and halfway down the block with the firearm. She then heard his brother Anthony call out to him and say "Hey, give me the gun." Appellant returned and handed the gun to his brother who threw it in the yard. Ms. Williams ran to retrieve the gun when Appellant attacked her again with punches. As the two were fighting for the weapon, the weapon fired once, and Appellant was shot in the leg. This ended the altercation and Appellant retreated.

Police Officer Peter Chalk (hereinafter "Officer Chalk") received a report of a person with a gun and arrived at the location shortly after hearing a gunshot. Upon arrival [Officer Chalk] saw Appellant emerge between two parked cars stating, "She shot me." Officer Chalk subsequently found Ms. Williams crying on her porch with a phone in hand and the gun next to her. Ms. Williams was placed in custody for questioning and Appellant was transported to the hospital. Detective Colin Goshert (hereinafter "Detective Goshert") testified a 9-millimeter FCC was recovered on scene.

Appellant testified he and Ms. Williams, the mother of his child, "don't really get along." They had not seen each other for three years and she did not invite him over. Appellant said she allowed him entry into her home then started "going off" and "pulled a gun on (him)" so he "took it from her." Appellant pushed her onto the couch, walked out with the gun then threw it the trash. Appellant indicated when Ms. Williams came outside, he "wanted to get the gun before she (could)," thus, another struggle ensued. The "gun went off," and shot him in the leg, then Appellant walked away. Appellant further stated that he never threatened, punched or struck Ms. Williams.

Trial court opinion, 2/22/24 at 3-4 (citations omitted).

Appellant waived his right to a jury and proceeded to a bench trial before the Honorable Roxanne E. Covington on February 17, 2023. That same day, Appellant was found guilty of burglary, criminal trespass, simple assault, REAP, firearms not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia. Appellant was acquitted of aggravated assault and criminal conspiracy. On April 14, 2023, the trial court sentenced Appellant to an aggregate term of 5 to 10 years' imprisonment, to be followed by 2 years' probation. Specifically, Appellant was sentenced to 4 to 8 years' imprisonment for burglary, a consecutive term of 1 to 2 years' imprisonment for criminal trespass, and two years' probation for simple assault. Appellant received no further penalties for his REAP and firearms convictions. On April 19, 2023, Appellant filed a timely post-sentence motion for reconsideration of his sentence that was denied by operation of law on August 23, 2023. This timely appeal followed.

Appellant raises the following issues for our review:

> A. Was [Appellant] wrongly convicted of burglary when the Commonwealth failed to prove that he had the intent to commit a crime at the time that he entered the complainant's house?
>
> B. Was [Appellant] wrongly convicted of firearms not to be carried without a license when the Commonwealth failed to prove that he possessed the firearm either in a vehicle or concealed on or about his person?

Appellant's brief at 3. For the ease of our discussion, we have elected to address Appellant's claims in a different order than presented in his appellate brief.

Preliminarily, we are constrained to agree with both the trial court and the parties that Appellant's judgment of sentence for firearms not to be carried without a license under Section 6106(a)(1) should be vacated because there was no evidence that Appellant concealed an unlicensed firearm in this matter. *See* Appellant's brief at 12-13; Commonwealth's brief at 9-10. As the trial court conceded in its opinion:

> [T]he essence of this offense is the concealed carrying of a weapon, whether it is in a vehicle or on the person. A close review of each witness's testimony reveals no evidence that Appellant hid or covered the firearm when he ran out of the [victim's] residence. As a conviction for [Section] 6106 requires concealment, and the Commonwealth presented no evidence that the gun was concealed while Appellant carried the weapon on or about his person, the Court is constrained to vacate Appellant's conviction. Thus, Appellant's sentence of 'no further penalty' on the charge of [Section] 6106 should be vacated.

Trial court opinion, 2/22/24 at 8 (citation, internal quotation marks, and emphasis omitted).

Based on the foregoing, Appellant's judgment of sentence for firearms not to be carried without a license charge should be vacated.

Appellant next argues that there was insufficient evidence to sustain his conviction for burglary because the Commonwealth failed to prove that he entered the victim's home with the specific intent to commit a crime therein. Appellant's brief at 8-11. This claim is belied by the record.

Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

A person will be found guilty of the crime of burglary if, "with the intent to commit a crime therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person

is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]" 18 Pa.C.S.A. § 3502(a)(1)(i).

With regard to the specific intent element of burglary, our Court has previously held that:

> [t]he intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances. The Commonwealth is not required to allege or prove what particular crime a defendant intended to commit after his forcible entry into the private residence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1022 (Pa.Super. 2002) (internal citations omitted), *appeal denied*, 805 A.2d 521 (Pa. 2002).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was ample evidence that Appellant possessed the requisite intent to commit a crime when he entered the victim's home. The record establishes that on the evening in question, Appellant arrived unannounced at the home of his daughter's mother, the victim, after nearly three years of no contact and began aggressively kicking and banging on the door and screaming at her that he wanted to see his daughter. Notes of testimony, 2/17/23 at 16-18. Thereafter, Appellant barged through the door of the home and assaulted her moments after entry when the victim called the police. *Id.* at 17-20. Appellant also acknowledged

that after the victim retrieved a firearm from her pocketbook and called the police, he stated, "[w]ell, since I'm going to jail, I'm going to beat [the victim's] ass." *Id.* at 19, 22; *see also* Appellant's brief at 11.

Based on the foregoing, we find that the totality of the circumstances supports the trial court's determination that Appellant entered the victim's home with the intent to commit a crime therein. Accordingly, we discern no error on the part of the trial court in concluding that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for burglary.

Judgment of sentence for firearms not to be carried without a license vacated. Judgment of sentence affirmed in all other respects.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2024