**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY L. KUHN | : | |
| | : | |
| Appellant | : | No. 1099 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 13, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002519-2022

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                           **FILED: MAY 30, 2025**

Appellant, Bradley L. Kuhn, appeals *nunc pro tunc* from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his jury trial convictions for burglary, strangulation, simple assault, driving under the influence of alcohol or a controlled substance ("DUI"), two counts of endangering the welfare of children ("EWOC"), and various summary offenses.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with the aforementioned offenses in connection with a physical altercation that occurred on October 6, 2022, involving his wife, his children, and his wife's parents.  The matter proceeded to a jury trial, which commenced on May 8, 2023.  Ashley Kuhn, Appellant's

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1), 2718(a), 2701(a), 75 Pa.C.S.A. § 3802(a), 18 Pa.C.S.A. § 4304(a), respectively.

wife, testified that on October 6, 2022, she and her three minor children were eating dinner when Appellant, who had been drinking, walked into the house. A verbal altercation between Ms. Kuhn and Appellant escalated into a physical altercation when Ms. Kuhn "smacked" Appellant. Ms. Kuhn described the altercation that transpired as follows:

> And then after that he jumped up out of the chair. The chair flew back into the kitchen toward the sink, and then he came over to where I was sitting and put his hands around my neck and started to squeeze, and as he was doing that, my chair slid back and was tight up against the wall that was behind me. I also had chicken in my mouth so I was choking on the chicken as well. That lasted for probably a minute or two.
>
> Then [A.K., Appellant and Ms. Kuhn's daughter, who was 12 years old at the time,] came running in and grabbed ahold of his arms about like right in here and started pulling him off. And I went to get up out of the chair, and he asked me where I thought I was going and pushed me back into the chair and put his hands around my throat again and started to squeeze.
>
> I was able to get my arms between his and break his hands away from my throat, and then I turned my body so the right side of my body was facing toward him, and I brought my knees up to my stomach and brought my arms up to protect my head and he started punching me and kneeing me and elbowing me, and it would have been on my head and my shoulder.

(N.T. Trial, 5/8/23, at 27-28). Ms. Kuhn further stated that during both times when Appellant put his hands around her neck, she "couldn't breathe" and "started seeing … those sparkly flashy things." (*Id.* at 28). On cross examination, when asked if she may have been choking because of the food in her mouth, Ms. Kuhn clarified, "No, … I was choking because of [Appellant's]

- 2 -

hands being around my neck. He had both of his hands squeezing as tight as he possibly could around my neck." (*Id.* at 49).

After she was able to break away from Appellant, Ms. Kuhn gathered her children, went to her parents' house, and called the police. While they were waiting for the police to arrive, Appellant arrived at her parents' residence and demanded that Ms. Kuhn return the key fob to his Jeep. When Appellant attempted to enter the house, Lisa Long, Ms. Kuhn's mother, tried to physically block the entrance. She had her back against the door with both hands on the doorknob, using her full body weight to try to prevent Appellant from entering. She also repeatedly told Appellant to leave and that he was not welcome there. Appellant continued to shove against the door and eventually succeeded in pushing through, knocking Ms. Long to the ground in the process.

Once inside, Appellant walked toward Ms. Kuhn, yelling, cursing and demanding that she return the key fob to the jeep. Richard Foreman, Ms. Kuhn's stepfather, placed his cane in Appellant's path, in an attempt to create a barrier between Appellant and Ms. Kuhn. Appellant grabbed Mr. Foreman's cane and pushed it down on Mr. Foreman's chest, pinning Mr. Foreman down into the chair in which he was sitting. Appellant then grabbed the chair that Ms. Kuhn was previously sitting in and flung it across the room, causing damage. Appellant continued to yell and curse at Ms. Kuhn. When a neighbor arrived at the house, Appellant left the premises. After a brief period,

Appellant returned to the house again and began knocking on the door. The police arrived shortly thereafter and arrested Appellant. A.K., Ms. Long, and Mr. Foreman each testified, largely in line with Ms. Kuhn's testimony.

On May 9, 2023, the jury convicted Appellant of burglary, strangulation, simple assault, DUI and two counts of EWOC. The court also found Appellant guilty of multiple related summary offenses. The court sentenced Appellant to an aggregate of 4½ to 10 years' incarceration on June 13, 2023. On December 20, 2023, Appellant filed a petition pursuant to the Post Conviction Relief Act,[2] seeking to reinstate his direct appeal rights *nunc pro tunc*. The court granted Appellant's petition and reinstated Appellant's direct appeal rights on July 9, 2024. Appellant timely filed a notice of appeal *nunc pro tunc* on August 6, 2024. On August 7, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on August 28, 2024.

Appellant raises the following issues for our review:

> Did the evidence establish beyond a reasonable doubt [Appellant's] intent to commit a crime when he entered the premises in question sufficiently to sustain [Appellant's] conviction for burglary…?
>
> Did the evidence establish beyond a reasonable doubt that [Appellant] had impeded [Ms. Kuhn's] breathing or blood circulation when he placed his hands on [Ms. Kuhn's] throat sufficiently to sustain [Appellant's] conviction for strangulation…?

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

(Appellant's Brief at 4).

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

In his first issue, Appellant concedes that he forced his way into his in-laws' house but contends that the Commonwealth failed to present any evidence to demonstrate that Appellant intended to commit a crime when he

- 5 -

entered. Appellant claims that although the evidence shows that Appellant was angry when he entered the house, he did not brandish a weapon or threaten anyone with harm. Appellant asserts that all the witnesses testified that throughout the encounter Appellant repeatedly demanded that Ms. Kuhn return the key fob to his Jeep, demonstrating that Appellant only forced his way into the house to retrieve the key fob. Appellant argues that "nothing [Appellant] said or did throughout the entire episode manifested his intent to commit a crime inside [his in-laws' residence.]" (*Id.* at 14). Appellant concludes that the Commonwealth failed to present sufficient evidence to sustain his burglary conviction, and this Court should vacate the judgment of sentence. We disagree.

The Crimes Code defines burglary, in relevant part, as follows:

**§ 3502. Burglary**

**(a) Offense defined.**—A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

18 Pa.C.S.A. § 3502(a)(1)(i).

To establish the offense of burglary, "[t]he Commonwealth is not required to allege or prove what particular crime a defendant intended to commit after his forcible entry into the private residence." ***Commonwealth***

- 6 -

*v. Lambert*, 795 A.2d 1010, 1022 (Pa.Super. 2002), *appeal denied*, 569 Pa. 701, 805 A.2d 521 (2002). Additionally:

> The intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances.

*Id.* (citation omitted).

Instantly, the trial court concluded that the Commonwealth presented sufficient evidence for the jury to infer Appellant's criminal intent upon entering Ms. Long and Mr. Foreman's residence. The court explained:

> [T]he testimony and evidence submitted at trial, viewed in the light most favorable to the Commonwealth as the verdict-winner, demonstrated that after strangling [Ms. Kuhn at] their shared residence, Appellant pursued [Ms. Kuhn] to her parents' residence and entered the residence by forcing his way through their closed front door. … Appellant forced his way into the residence after being told by [the] homeowner[, Ms. Long] that he was not welcome, that she would not open the door for Appellant, and that he would not be allowed entry into the residence. Appellant even forced his way into the residence over Ms. Long's efforts to physically bar his entry. After forcing his way through the front door of the residence, Appellant assaulted [Mr. Foreman,] which constituted a bodily injury crime.

(Trial Court Opinion, filed 9/11/24, at 8-9). We agree with the court's analysis. The Commonwealth presented evidence that Appellant pursued Ms. Kuhn to her parents' residence, where she fled to seek safety from Appellant's prior violent outburst. Additionally, Appellant forcibly entered the residence

by using enough force to knock down Ms. Long, who was attempting to keep the door closed with her body. Based on the totality of the circumstances, and viewed in the light most favorable to the Commonwealth as the verdict-winner, the evidence was sufficient for the jury to infer that Appellant entered the residence with the intent to commit a crime therein. ***See Lambert, supra*** (holding evidence that defendant entered residence using force strong enough to shatter door was sufficient to permit inference that defendant intended criminal purpose). Thus, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant claims that Ms. Kuhn testified that she had chicken in her mouth at the time Appellant placed his hands around her neck, and he contends that Ms. Kuhn began choking on the chicken. Appellant avers that A.K., a twelve-year-old child, succeeded in pushing Appellant away from Ms. Kuhn, demonstrating that Appellant's hold on Ms. Kuhn's neck was minimal. Appellant argues that these facts taken together raise a reasonable doubt as to whether Ms. Kuhn's inability to breathe was due to the pressure Appellant applied on Ms. Kuhn's neck or the chicken that was already in her mouth. As such, Appellant concludes that the Commonwealth failed to establish that Appellant intentionally or knowingly impeded Ms. Kuhn's breathing, and this Court should vacate his conviction for strangulation. We disagree.

The Crimes Code defines strangulation as follows:

**§ 2718. Strangulation**

**(a) Offense defined.**—A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

(1) applying pressure to the throat or neck; or

(2) blocking the nose and mouth of the person.

18 Pa.C.S.A. § 2718(a).

The Commonwealth can establish intent to impede a victim's breathing by "by direct or circumstantial evidence and it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Horlick*, 296 A.3d 60, 63 (Pa.Super. 2023) (citation omitted). "The Crimes Code does not require that the victim be unable to breathe to prove strangulation or require proof of a particular level of obstruction of the victim's breathing to prove strangulation." *Commonwealth v. Weitzel*, 304 A.3d 1219, 1225 (2023). "Rather, the Commonwealth need only prove that the defendant hindered or obstructed the victim's breathing." *Id.* This Court further explained:

> The mere fact of squeezing a person's neck is well understood to impede that person's breathing; this fact alone is enough for a fact-finder to reasonably infer that the result is known or intended. To be clear, we are not providing for strict liability. While this evidence is sufficient for a fact-finder to infer intent, the fact-finder may conclude other circumstances negate the reasonable inference about the defendant's state of mind.

*Horlick, supra* at 63.

Instantly, Ms. Kuhn testified that Appellant placed his hands around her

neck and squeezed two times. Ms. Kuhn stated that during both incidents, she could not breathe and started seeing stars. Appellant is correct that Ms. Kuhn testified that she was also choking on chicken that was already in her mouth during the first time that Appellant put his hands around her neck. Nevertheless, she clarified that Appellant was squeezing her neck as tight as he could at the time, and this was the primary reason she was choking. Regardless of Appellant's arguments to the contrary, Ms. Kuhn's direct testimony was that Appellant squeezed her neck tightly and she could not breathe as a result. *See Horlick, supra*. On this record, we see no merit to Appellant's claim that the evidence was insufficient to sustain his strangulation conviction. *See Sebolka, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/30/2025

- 10 -